HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KIMBERLY MILLER, BRIANA HOUSER, and DEAN BUCHHOLZ, on behalf of themselves and on behalf of others similarly situated,<br><br>Plaintiff,<br>v.<br><br>P.S.C., INC., d/b/a PUGET SOUND COLLECTIONS, and DOES ONE THROUGH TEN,<br><br>Defendant. | CASE NO. 3:17-cv-05864-RBL<br><br>ORDER GRANTING CLASS CERTIFICATION AND RESERVING CERTIFICATION OF SUBCLASS<br><br>DKT. #22 |

**INTRODUCTION**

Before the Court is Plaintiffs' Motion for Class Certification. Dkt. #22. Plaintiffs Kimberly Miller, Briana Houser, and Dean Buchholz are individuals who owed unpaid medical bills and made payments to Defendant Puget Sound Collections, or P.S.C., Inc. After contacting Plaintiffs regarding their debts, P.S.C. required Plaintiffs to sign "Stipulation re Balance Owed and for Judgment" and "Stipulated Judgment" forms in order to enter monthly payment plans. When Plaintiffs missed a payment or refused to enter a revised agreement, P.S.C. filed these

ORDER GRANTING CLASS CERTIFICATION
AND RESERVING CERTIFICATION OF
SUBCLASS - 1

forms in court and obtained judgments against Plaintiffs without serving a summons and complaint.

Plaintiffs claim that P.S.C.'s practice of using these stipulated judgment forms violates the Washington Consumer Protection Act (CPA) and Fair Debt Collection Practices Act (FDCPA). Specifically, Plaintiffs allege that P.S.C.'s stipulated judgment forms unlawfully simulate legal process, represent threats of legal action that P.S.C. cannot legally make, misrepresent the legal status of consumers' debts, and are generally unfair and deceptive. Plaintiffs also claim that P.S.C. does not account for payments consumers have already made toward the principal when the stipulated judgment forms are filed in court. Plaintiffs now move to certify a class of all consumers who have signed and returned P.S.C.'s stipulated judgment forms.

**BACKGROUND**

P.S.C. is a debt collector located in Tacoma, Washington. P.S.C. uses a software system called CUBS to manage information regarding consumers, such as name, address, and payments. Andersen Dep., Dkt. #23-1, at 219. P.S.C. uses the information in CUBS to generate "Stipulation re Balance Owed and for Judgment" and "Stipulated Judgment" forms, which have a standard format that looks like a court document. *See* Dkt. #23-5, at P.S.C.000080-85 (examples of P.S.C.'s forms signed by Houser); Andersen Dep., Dkt. #23-1, at 72-73.

The Stipulated Judgment form first identifies the creditors and debtors, principal amount, interest, attorney's fees, and costs. Dkt. #23-5, at P.S.C.000080-82. It then includes language entering judgment and a signed approval and waiver of notice by the consumer on the last page. *Id*. The Stipulation re Balance Owed and for Judgment form establishes a payment plan and date at which the consumer must enter into a new agreement. Dkt. #23-5, at P.S.C.000083-85. It also

states that if the consumer fails to make a payment or enter into a new agreement, P.S.C. may enter the judgment and apply all prior payments first to costs, then to interest, and finally to the principal. *Id*. P.S.C. is also authorized to "amend the Judgment Summary on the attached Judgment to reflect the actual filing fee required at the time of filing and the actual total judgment." *Id*.

During the proposed class period, at least 4,276 Washington consumers returned signed forms to P.S.C. and at least 942 consumers had judgments obtained against them by P.S.C. Terrell Dec., Dkt. #23, at ¶ 9. P.S.C.'s "Collector Notebook" lays out the procedures for when and how to use stipulated judgment forms. Dkt. #20, at P.S.C. 000586.

All three named Plaintiffs signed stipulated judgment forms after P.S.C. contacted them regarding unpaid medical bills. Motion, Dkt. #22, at 6. Miller had an original debt of $2,193.70 and signed stipulated judgment forms in August 2013 to establish a payment plan. Complaint, Dkt. #1-4, at 4. P.S.C. filed the forms in October 2016 and garnished Miller's wages after she became unable to make payments. *Id*. at 5. P.S.C. has garnished at least $3,654.95. *Id*. at 6.

Houser had an original debt of $5,816.43 and signed stipulated judgment forms in August 2013 to establish a payment plan. *Id*. at 6. Houser signed several revised forms over the years, but failed to sign a new form that P.S.C. sent in 2016. Houser Dec., Dkt. #25, at 2. P.S.C. filed the stipulated judgment in October 2016 and began garnishing wages. *Id*. P.S.C. has garnished at least $1,775.45 to date. *Id*.

Buchholz had an original debt of $10,513.89. Complaint, Dkt. #1-4, at 8. Buchholz signed the stipulated judgment forms and made payments according to the plan until fall of 2016, when his family was about to move to Italy. Buchholz Dec., Dkt. #26, at 1-2. Buchholz attempted to settle the balance on his account with P.S.C., but was refused because the amount

he offered did not cover the entire balance. *Id*. at 2. Buchholz kept making payments according to the July 2015 plan, but P.S.C. filed the stipulated judgment in October 2016. *Id*. P.S.C. has garnished at least $4,403.60 from Buchholz's bank account. *Id*.

Plaintiffs filed this suit in September 2017. Dkt. #1-3. They claim that P.S.C.'s use of stipulated judgment forms violate a variety of specific prohibitions in the Washington Collection Agency Act (CAA), which constitutes a *per se* violation of the CPA. *Id*. at 16-19. They also allege that the P.S.C.'s practices are deceptive and unfair under the CPA. *Id*. at 19-21. Finally, they claim that P.S.C.'s practices violate the FDCPA. *Id*. at 21-22. Under their CPA claims, Plaintiffs seek disgorgement, actual damages under the statute, and an injunction prohibiting P.S.C. from collecting any amounts exceeding the principal from class members who signed stipulated judgment forms. RCW 19.86.090; RCW 19.16.450. Under their FDCPA claims, Plaintiffs seek statutory damages and actual damages. 15 U.S.C. § 1692k.

Plaintiffs seek certification of a class entitled to relief under the CPA, as well as a subclass seeking relief under the FDCPA. Plaintiffs propose the following class definitions:

> **Class:** All persons who returned to Defendants a signed "Stipulation Re Balance Owed and For Judgment," or "Stipulated Judgment," or substantially similar debt collection form, at any time since September 18, 2013.
>
> **FDCPA Sub-Class:** All persons in the Class whose alleged debt was incurred primarily for personal, family, or household purposes and from whom P.S.C. collected or attempted to collect a debt using a "Stipulation Re Balance Owed and For Judgment" or "Stipulated Judgment," or substantially similar debt collection form, at any time since September 18, 2016.

# DISCUSSION

A party seeking to certify a class must demonstrate that it has met all four requirements of Federal Rule of Civil Procedure 23(a) (numerosity, commonality, typicality, and adequacy) and at least one of the requirements of Rule 23(b). Under Rule 23(a), members of a class may sue or be sued as representative parties only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) (emphasis added).

Rule 23(b) provides for the maintenance of several different types of class actions. Fed. R. Civ. P. 23(b). Plaintiffs seek to certify the proposed class under 23(b)(3). A class can be certified under this rule if a court finds both that common questions of law or fact "predominate" over individual questions and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

**a.     Rule 23(a) Requirements**

*1.     Numerosity*

The numerosity requirement is met when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no threshold number of class members that automatically satisfies this requirement," but 40 is generally an adequate number. *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1326–27 (W.D. Wash. 2015); *see also Wamboldt v. Safety–Kleen Sys., Inc.*, No. C 07–0884 PJH, 2007 WL 2409200, at *11 (N.D.Cal. Aug. 21, 2007).

Plaintiffs allege that P.S.C. received signed Stipulated Judgment Forms from at least 4,276 Washington consumers, and P.S.C. does not challenge this. Motion, Dkt. #22, at 11-12. Numerosity is therefore satisfied as to the class. However, P.S.C. argues that Plaintiffs have failed to prove that the FDCPA subclass is sufficiently numerous. Indeed, Plaintiffs did not address numerosity with respect to the subclass in their Motion. However, in the Reply, Plaintiffs point to an excerpt of P.S.C.'s data production showing that P.S.C. filed stipulations for 57 consumers after September 18, 2016. Dkt. #23-8. Given that all three named Plaintiffs incurred their debts "primarily for personal, family, or household purposes" and that a majority of P.S.C.'s accounts are individuals with medical debts, Plaintiffs ask the Court to make a reasonable inference that the FDCPA subclass contains at least 40 members. Reply, Dkt. #38, at 3; Andersen Dep., Dkt. #23-1, at 18-19; *see Gold v. Midland Credit Management, Inc.*, 306 F.R.D. 623, 631 (N.D. Cal. 2014) (making a "common sense inference" that a sufficient portion of the 43,942 debtors at issue used their credit cards primarily for person, family, or household purposes).

Although Plaintiffs have only presented evidence of 57 consumers who had stipulations filed after September 18, 2016, the Court still finds it likely that at least 40 of these individuals incurred debt primarily for "personal, family, or household purposes." Indeed, these purposes encompass most of the reasons people spend money. Furthermore, given how Plaintiffs drafted their claims, P.S.C. may have violated the FDCPA merely by using their Stipulated Judgment forms as a means of entering debt repayment plans with consumers, regardless of whether they were ever filed. *See* Complaint, Dkt. #1-4, at 21-22 ("P.S.C. makes false representations and implications that [their forms] are not legal process forms when it presents them to consumers as 'payment plan' documents."). There are likely many consumers who returned signed stipulated

judgment forms after September 18, 2016, that were not filed in court. These consumers are not represented on the data excerpt provided by Plaintiffs, which only shows consumers who returned stipulations that were later filed, but they nonetheless could be included in the subclass. *See* Andersen Dep., Dkt. #39-1, at 213 (stating that the "vast majority" of stipulations were never filed).

However, because Plaintiffs never mention these potential subclass members in their Reply, it is possible that the Court is misconstruing the class definition. P.S.C. has also not had an opportunity to respond to Plaintiffs' arguments regarding numerosity for the subclass, which are raised in the Reply. Consequently, the parties should submit limited additional briefing on this issue. P.S.C. has ten days from the date of this Order to file supplemental briefing, and Plaintiffs have fifteen days from the date of this Order to respond. The parties' briefs should not exceed seven pages.

2.  *Commonality*

To satisfy Rule 23(a)'s "common question of law or fact" requirement, the plaintiffs' claims must "depend upon a common contention" that is "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This means that determining the truth or falsity of the contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. The key question is whether a "classwide proceeding [will] generate common answers apt to drive the resolution of the litigation." *Id*. The commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). Indeed, it "only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir.2012).

For both the class and the subclass, Plaintiffs' claims will likely rise or fall on the legal implications of P.S.C.'s Stipulation Re Balance Owed and For Judgment and Stipulated Judgment forms. Plaintiffs allege that P.S.C. violated the CPA and/or FDCPA by communicating with debtors through forms or instruments that simulate judicial process; threatening to take legal action that it cannot legally take at the time; making false representations of the character, amount, or legal status of debts; using false representations or deceptive means to collect debts; and making false representations or implications that documents are or are not legal process. Complaint, Dkt. #1-4, at 16-22; Motion, Dkt. #22, at 13-15. All of these claims will turn on the content of P.S.C.'s debt collection forms, as well as practices related to those forms described in the "Collector Notebook." Only the claim that P.S.C. attempts to collect principal amounts without accounting for prior payments may require a more case-by-case approach. *See id*. at 17. However, this lone issue is not enough to defeat commonality.

P.S.C. argues that there is no commonality because Plaintiffs have not shown that all class members suffered a common injury. But P.S.C. misapplies the requirements described in *Dukes*. 564 U.S. at 349-50. The Court stated that commonality is not automatically satisfied by a violation of the same law, but this was merely to emphasize that plaintiffs must allege a concrete and common source of the violation, such as one supervisor's bias or an unfair testing procedure. *Id*. at 350, 353. Faced with 1.5 million class members at thousands of different Walmart locations, the Court held that the plaintiffs' injuries stemmed from too many separate and inconsistent sources to satisfy commonality. *Id*. at 343-45, 359-60.

Here, in contrast, all of the alleged injuries stem from P.S.C.'s use of the stipulated judgment forms. Furthermore, Plaintiffs also suffered the same types of injuries, which take the form of being subjected to the same deceitful collection practices, unlawful uses of payments,

and garnishments. *See* Complaint, Dkt. #1-4, at 17, 22. Nonetheless, P.S.C. claim that some class members may not have been "injured in his or her business or property." First, this argument has no impact on the FDCPA subclass, which seeks statutory damages. Dkt. #1-4, at 22. Second, Plaintiffs persuasively argue that most, if not all, class members who signed stipulated judgment forms also suffered injury in the form of payments that were wrongfully applied to costs and interest, since the entire purpose of signing the stipulated judgments was to establish a payment plan. Reply, Dkt. #38, at 5. If P.S.C.'s stipulation forms violate the CAA, P.S.C. was statutorily prohibited from applying payments in this way. *See* RCW 19.16.450; *see also Dibb v. Allianceone Receivables Mgmt., Inc.*, No. 14-5835 RJB, 2015 WL 8970778, at *6 (W.D. Wash. Dec. 16, 2015) (finding common injury issues where the defendants collected fees after sending a notice letter that did not conform to CAA requirements). In light of this, there are sufficient common questions of law to sustain both the class and subclass.

*3.     Typicality*

"[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon, 150 F.3d at 1020*. This requirement "ensures that 'the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Gold v. Midland Credit Management, Inc.*, 306 F.R.D. 623, 631 (N.D. Cal. 2014) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n. 13 (1982)). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). Courts consider "whether other members have the same or similar injury, whether the action is based on

conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 508.

Here, typicality is satisfied for both the class and subclass. As previously mentioned, Plaintiffs all incurred debt "primarily for personal, family, or household purposes," and signed stipulations that were later filed by P.S.C.. Their claims are therefore typical of the FDCPA subclass, and P.S.C. does not argue otherwise.

With respect to the CPA class, P.S.C. argues that Plaintiffs' claims are not typical because they suffered no injury to their "business or property," as required by RCW 19.86.090. However, Plaintiffs have alleged that P.S.C. applied class members' payments to interest and costs, which would be prohibited under the CAA if P.S.C.'s stipulated judgment forms violate the statute. *See* RCW 19.16.250, 450. Plaintiffs would have suffered this injury in a way that is co-extensive with absent class members.

Furthermore, Plaintiffs' claims are also typical of class members who suffered any other type of alleged injury. Although P.S.C. casually asserts that it "would have obtained writs of garnishment against" the Plaintiffs anyway, the fact remains that P.S.C. may have obtained judgments against Plaintiffs through deception and in violation of their due process rights. If this is the case, Plaintiffs may be able to recover some or all of their garnished wages or savings. Whether or not they succeed in this, Plaintiffs' payments and P.S.C's garnishments were facilitated by the stipulated judgment forms, as they presumably were for all other class members subjected to garnishment.[1] Indeed, P.S.C. does not identify any groups within the class that

---

[1] Houser alleges that P.S.C. "did not change the amount of the total judgment to reflect the payments it had received" when it filed the stipulated judgment. Complaint, Dkt. #1-4, at 7. Any class members who suffered this type of injury will therefore also be represented by a named Plaintiff.

significantly differ in terms of causation or injury. Plaintiffs were therefore injured in a manner typical of the class as a whole, and typicality is satisfied for both the class and subclass.

*4.    Adequacy*

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?' " *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir.2011) (quoting *Hanlon*, 150 F.3d at 1020).

As to the first requirement, P.S.C. rehashes its argument that the named Plaintiffs cannot represent the class because they "fail to show that they are members of the putative CPA class." Opp'n, Dkt. #34, at 17. However, as previously explained, this is incorrect. P.S.C. further contends that Buchholz cannot adequately represent the class because he now lives in Italy and cannot afford to return to appear in court. However, Plaintiffs counter that Buchholz testified that he could borrow money to appear at trial, and that Plaintiffs' counsel could cover travel costs if necessary. The Court is satisfied with this response, and sees no other reason why the Plaintiffs would be inadequate representatives.

Regarding the second requirement, P.S.C. does not challenge the adequacy of Plaintiffs' counsel. Plaintiffs have supplied sufficient evidence of their litigation experience with class actions. The adequacy requirement it thus satisfied here.

**b.    Rule 23(b) Requirements**

*1.    Predominance of Common Questions over Individual Questions*

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

(2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Common questions are defined by the plaintiffs' ability to make a prima facie showing using the same evidence. *Id*. "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id*. (internal quotations omitted). However, "[i]f the plaintiffs cannot prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance." *Vaquero v. Ashley Furniture Indus.*, Inc., 824 F.3d 1150, 1154 (9th Cir. 2016).

When considering whether common issues predominate, the court should begin with "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). In addition, "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

For reasons already discussed in relation to the 23(a) requirements, common questions predominate. The elements of a CPA claim are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) causes injury to the Plaintiffs' business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986). The first three elements will be decided based on common questions because Plaintiffs challenge P.S.C.'s general practice of using stipulated judgments. It is likely that nearly all class members made payments after signing a stipulated judgment (the stipulation's purpose was to establish a payment plan), so all suffered a

1 | common injury if those payments went toward costs, interest, or other fees. RCW 19.16.450.
2 | P.S.C.'s electronic records should indicate whether this is the case. Andersen Dep., Dkt. #23-1,
3 | at 217-19. Individualized inquiries into actual damages and disgorgement are insufficient to
4 | overwhelm these common issues. *See Dibb*, 2015 WL 8970778, at *6. Furthermore, to the extent
5 | that actual damages and disgorgement would stem from unlawful or excessive garnishments,
6 | P.S.C. has not explained how these types of injuries will differ significantly from one another.
7 | The fact that Plaintiffs already owed money does not preclude injury, and even if did, this would
8 | be true class-wide.

P.S.C. also argues that its affirmative defenses overwhelm the common questions, but this is unpersuasive. P.S.C. contends that some class members waived their right to be served, but any evidence of this would be found in the stipulated judgment forms themselves, which are roughly the same. *See* Opp'n, Dkt. #34, at 19 n.10. Likewise, any "post-breach, pre-filing letter from P.S.C. . . . notifying [the class member] that the Stipulated Judgment would be filed if he/she did not enter into a new payment plan" would also likely be a standard form letter, and in any case would present a common legal question. *Id.* at 19; Opp'n, Dkt. #34, at 7 (stating that the letter sent to Miller was similar to the one sent to Houser). Consequently, even if they prove important to the case, the Court can likely address P.S.C.'s affirmative defenses using common evidence.

Finally, P.S.C.'s insinuation that no Ninth Circuit case has addressed the Supreme Court's holding in *Comcast Corp. v. Behrend* that questions of individualized damages can defeat certification is flat wrong. 569 U.S. 27, 34 (2013). *Pulaski & Middleman, LLC v. Google, Inc.* specifically limited *Comcast* to "the proposition that 'plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" 802 F.3d

979, 987–88 (9th Cir. 2015) (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)). In the Ninth Circuit, "[d]amage calculations alone . . . cannot defeat certification." *Id.* at 988. Here, any damages stem from P.S.C.'s actions of using stipulated judgment forms and filing them in court. Mere differences in the resulting damages do not overwhelm common questions.

2. *Superiority of the Class Action*

The superiority requirement focuses on whether a class action is the best method of dispute resolution in the particular case, and "necessarily involves a comparative evaluation of alternative mechanisms." *Hanlon*, 150 F.3d at 1023. Courts should consider the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Plaintiffs identify several reasons why a class action is desirable here, including the relatively small amounts at issue and class members being unaware of their claims. P.S.C. does not challenge the first three factors identified above, and the Court sees no reasons why they are not met.

P.S.C. does challenge the manageability of the class. P.S.C. argues that the CPA class presents an ascertainabiltiy problem because determining whether individuals belong to the class will require "proof that each individual member suffered injury" caused by P.S.C. However, determining who belongs to the class as it is currently defined would not require this analysis; rather, it would only require determining which individuals returned stipulated judgment forms within the specified time range, a task readily achievable using P.S.C.'s records. In any case, the

Ninth Circuit has rejected the administrative feasibility of identifying class members as a requirement for class certification. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir.).

P.S.C. also argues that differences in causation will require it to review "thousands of accounts" to determine whether each individual "t[ook] or refrain[ed] from taking some action, in response to receiving a Stipulation and Stipulated Judgment, that resulted in injury." Opp'n, Dkt. #34, at 23. These vague allusions to the mysterious actions of class members are unavailing. As Plaintiffs point out, the stipulated judgment forms caused Plaintiffs to make payments to P.S.C. and allowed P.S.C. to garnish their wages without serving a summons and complaint. Class members would still be in debt no matter what P.S.C. did, but how P.S.C. ended up with their money and any additional amounts was a result of the stipulated judgment forms. These "individualized inquiries" thus likely amount to damage calculations, which do not defeat certification. Furthermore, Plaintiffs persuasively argue that P.S.C. keeps records on the payments it collects, including how they are applied and whether garnishment proceedings were initiated. Reply, Dkt. #38, at 11; Andersen Dep., Dkt. #23-1, at 203-04, 213-14, 217-19. In short, the class action format is superior to individual actions.

c. **Plaintiffs' Notice Plan**

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs propose using P.S.C.'s records to identify the last known addresses of all consumers who have signed stipulated judgment forms. Plaintiffs request that the Court order P.S.C. to produce this data within 20 days so that Plaintiffs can send postcard notice to all class members directing them to a

website containing all pertinent information about the case. P.S.C. asks the Court to defer ruling on this issue until the parties have had a chance to confer.

Because the Court is already deferring certification of the FDCPA subclass pending supplemental briefing, the Court will also defer deciding this issue pending additional briefing. The parties should attempt to confer regarding notice before submitting their supplemental briefing.

**CONCLUSION**

The Plaintiffs' Motion for Class Certification [Dkt. #22] is GRANTED as to the CPA class as defined by Plaintiffs. Miller, Houser, and Buchholz are appointed as class representatives, and the Terrell Marshall Law Group and the Law Office of Joshua L. Turnham, PLLC, are appointed as class counsel.

Certification as to the FDCPA subclass as defined by Plaintiffs is RESERVED pending further briefing regarding the issue of numerosity. The issue of notice is also RESERVED pending additional briefing. P.S.C. has 10 days from the date of this Order to file a supplemental brief addressing both of these issues, and Plaintiffs have 15 days from the date of this Order to respond. The parties' briefs should not exceed seven pages. The parties should use this time to confer regarding an appropriate notice plan.

IT IS SO ORDERED.

Dated this 29th day of November, 2018.

Ronald B. Leighton
United States District Judge